UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
                                          :
SECURITIES AND EXCHANGE COMMISSION,       :
                                          :
                    Plaintiff,            :
                                          :        09 Civ. 8763
          v.                              :        (BSJ)(AJP)
                                          :
                                          :     **Opinion and Order**
ALISSA JOELLE KUENG,                      :
                                          :
                    Defendant.            :
------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/2/10

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

On October 15, 2009, the Securities and Exchange Commission

("SEC") filed a complaint against Alissa J. Kueng ("Kueng"),

alleging that Kueng violated Section 10(b) of the Securities

Exchange Act of 1934, 15 U.S.C. § 78j(b) ("Section 10(b)"), and

Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), promulgated

thereunder.  Kueng subsequently filed a motion to dismiss the

complaint under Rules 12(b)(6) and 9(b) of the Federal Rules of

Civil Procedure.  In response to Kueng's motion to dismiss, the

SEC moved, under Rules 12(d) and 12(f) of the Federal Rules of

Civil Procedure, to strike Kueng's motion to dismiss the

complaint.  For the following reasons, both Kueng's and the

SEC's motion are DENIED.

## BACKGROUND

The SEC alleges that on December 7, 2005, Benjamin Jones

("Ben Jones"), a former Vice President of Jamdat Mobile, Inc.

("Jamdat"), informed his brother, William Jones, III ("Bill Jones"), that Jamdat would be acquired by Electronic Arts ("EA") for $27 per share and that the acquisition would be made public the following day.  (Compl. ¶¶ 2, 3, 17.)  According to the complaint, within a few minutes of speaking to Ben Jones, Bill Jones called his friend, William T. Dailey ("Dailey"), a registered securities trader.  (Id. ¶¶ 4, 16.)  Bill Jones allegedly told Dailey of the impending acquisition, that the agreement would be publicly announced the following day (December 8, 2005), that the acquisition price would be $27 per share, and that the information had come from Ben Jones.  (Id. ¶¶ 4, 18, 19.)

The SEC alleges that Dailey told Kueng, a sales specialist at J.P. Morgan Securities, Inc. ("J.P. Morgan"), of the impending acquisition, including that Jamdat was being acquired by EA for $27 per share and that the acquisition would be publicly announced the following day.  (Id. ¶¶ 4, 21.)

Early on December 8, 2005, before information of the impending acquisition became public, the SEC alleges that Kueng described the transaction, including when news of the acquisition would become public, to a co-worker.  (Id. ¶ 22.) According to the complaint, Kueng subsequently informed a J.P. Morgan trader and several institutional clients of the impending acquisition, but omitted details regarding the timing of the

public announcement.  (Id. ¶¶ 22, 24.)  The J.P. Morgan trader and two of the institutional clients allegedly purchased Jamdat stock prior to the acquisition's public announcement, resulting in total trading profits of more than $350,000.  (Id. ¶¶ 23, 25, 27.)

The complaint alleges that Kueng knew or was reckless in not knowing that the information that she provided to the J.P. Morgan trader and the institutional clients was material, nonpublic information provided to her in breach of a fiduciary duty to Jamdat.  (Id. ¶¶ 29, 30.)  Based on these allegations, the SEC charges that Kueng violated Section 10(b) and Rule 10b-5.  (Id. ¶ 31.)

**LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief may be granted.  "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the materials facts alleged in the complaint as true."  Frasier v. Gen. Elec. Co., 930 F.2d 1004, 1007 (2d Cir. 1991).  The Court is also required to read a complaint generously, drawing all reasonable inferences from its allegations in favor of the plaintiff.  See California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 515 (1972).

3

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Instead, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1940 (2009).

Securities fraud claims are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Although intent may be alleged generally, a plaintiff must still "allege facts that give rise to a strong inference of fraudulent intent." Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995) (citations omitted).

## DISCUSSION

### I.   Kueng's Factual Assertions Outside The Complaint Are Excluded.

In her memorandum of law in support of her motion to dismiss, Kueng repeatedly makes factual assertions that fall outside the scope of the SEC's complaint.  For purposes of Rule 12(b) of the Federal Rules of Civil Procedure, "[f]actual allegations contained in legal briefs or memorandum are . . . treated as matters outside the pleadings."  Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988) (citation omitted).  When provided with materials outside the pleadings, in the context of a Rule 12(b)(6) motion to dismiss, "'the court may exclude the additional materials and decide the motion on the complaint alone or convert the motion to one for summary judgment.'"  Arnold v. Goetz, 245 F. Supp. 2d 527, 540 (S.D.N.Y. 2003) (quoting Sulton v. Greiner, No. 00 Civ. 727(RWS), 2000 WL 1809284, at *1 (S.D.N.Y. Dec. 11, 2000)).

In its opposition to Kueng's motion to dismiss, the SEC did not submit any evidence outside the complaint for the Court's consideration.  As a result, the Court will not convert Kueng's motion to dismiss to a motion for summary judgment.  See Rivera v. Pataki, No. 04 Civ. 1286(MBM), 2005 WL 407710, at *7 (S.D.N.Y. Feb. 7, 2005) ("If the court is satisfied that both parties have had a reasonable opportunity to contest any facts

averred outside the pleadings, and that neither party has been taken by surprise, the court may consider facts outside the pleadings and convert a motion to dismiss to a motion for summary judgment."(citing Krijn v. Pogue Simone Real Estate Co., 896 F.2d 687, 689 (2d Cir. 1990)).  Instead, the Court will exclude Kueng's factual assertions that fall outside the scope of the complaint and decide her motion to dismiss solely on the basis of the complaint.

Because the Court is excluding Kueng's factual assertions that are not in the complaint, the SEC's motion to strike Kueng's motion to dismiss the complaint is DENIED.

II.  The SEC Has Stated A Claim For Violation Of Section 10(b)

And Rule 10b-5.

Kueng, relying principally on United States v. Chestman, 947 F.2d 551 (2d Cir. 1991) (en banc), argues that the complaint fails to plead a breach of fiduciary duty or a similar relationship of trust and confidence because it makes no allegation regarding the nature of Dailey's and Kueng's relationship.  Chestman, however, was a criminal case tried under the misappropriation theory of Section 10(b) and Rule 10b-5 liability.  Id. at 570-71.  The SEC brought this case, by contrast, under the traditional theory of insider trading liability.  (See Compl. ¶¶ 2, 3, 14, 15, 17 (alleging Ben Jones was a company insider, who breached his fiduciary duty to

6

Jamdat).)   Thus, the SEC was not required to allege that there was a breach of fiduciary duty or similar relationship of trust and confidence between Dailey and Kueng.[1]

Instead, because this case was brought under the traditional theory of insider trading liability, the SEC must establish, by a preponderance of the evidence, that (1) Ben Jones, the alleged insider or tipper, breached a fiduciary duty by disclosing material, nonpublic information regarding EA's impending acquisition of Jamdat to Bill Jones, and (2) that Kueng, the alleged tippee, "knew or should have known that the information was disclosed in violation of a fiduciary duty." See S.E.C. v. Thrasher, 152 F. Supp. 2d 291, 303 (S.D.N.Y. 2001) (citing Dirks v. S.E.C., 463 U.S. 646, 659, 662 (1983); Chiarella v. United States, 445 U.S. 222, 228, 231 n.12 (1980)). The Court finds that the SEC sufficiently alleges both of these elements.

With respect to whether the complaint alleges a breach of fiduciary duty, first, the complaint alleges that, during the time at issue, Ben Jones was a Vice President of Jamdat, who was regularly apprised of Jamdat's acquisition discussions.   (Compl. ¶¶ 2, 14.)   These discussions, according to the complaint, were material and confidential.   (Id. ¶ 14.)   Second, the complaint

---

[1] Similarly, the SEC was not required to allege a breach of fiduciary duty or similar relationship of trust and confidence between Bill Jones and Dailey, as Kueng contends.

alleges that on December 7, 2005, Ben Jones, in breach of his fiduciary duty to Jamdat, informed Bill Jones that Jamdat was being acquired by EA for $27 per share and that the agreement would be publicly announced the following day.  (Id. ¶¶ 3, 17.)

The second element, whether the complaint alleges that Kueng knew or should have known that information of EA's impending acquisition of Jamdat was disclosed to her in violation of a breach of fiduciary duty, concerns scienter. "Scienter may be inferred from proof of 'facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness' or from proof that a defendant had 'both motive and opportunity to commit fraud.'"  S.E.C. v. Ballesteros Franco, 253 F. Supp. 2d 720, 727 n.2 (S.D.N.Y. 2003) (quoting Rothman v. Gregor, 220 F.3d 81, 90 (2d Cir. 2000)).  The specificity of the information, that EA would acquire Jamdat for $27 per share and that the acquisition would be publicly announced the following day (Compl. ¶ 21), constitutes strong circumstantial evidence that Kueng, a sales specialist at J.P. Morgan, either knew or should have known that the information came from an insider.  See S.E.C. v. Musella, 748 F. Supp. 1028, 1041-42 (S.D.N.Y. 1989) (finding that a "sufficiently sophisticated investor" that was told "about pending tender offers" either knew or had reason to know that the information came from the "'offering person' or someone acting on its

8

behalf").[2]  The allegation that Kueng failed to disclose the
timing of the public announcement to both the J.P. Morgan trader
(Compl. ¶ 22) and the institutional clients (id. ¶ 24) also
constitutes strong circumstantial evidence that Kueng knew or
should have known that information of EA's impending acquisition
of Jamdat came from an insider.

Kueng's final argument, that the complaint fails to plead a
personal benefit, fails because it incorrectly focuses on Dailey
as the tipper.  As explained above, in this case, Ben Jones was
the alleged insider.  (Compl. ¶ 2.)  In Dirks, the Supreme Court
explained that "the test is whether the insider personally will
benefit, directly or indirectly, from his disclosure."  463 U.S.
at 662 (emphasis added).  Objective facts and circumstances,
such as "'when an insider makes a gift of confidential
information to a trading relative or friend,'" may "'justify
[the] inference' that the insider benefited from the
disclosure."  S.E.C. v. Sekhri, No. 98 Civ. 2320(RPP), 2002 WL
31654969, at *2 (S.D.N.Y. Nov. 22, 2002) (quoting Dirks, 463
U.S. at 664).  The complaint alleges that Ben Jones told his
brother, Bill Jones, details of the impending acquisition.

---

[2] Although Musella was tried under the misappropriation theory, the scienter
element for a tippee is identical in traditional insider trading cases and
misappropriation theory cases.  See Thrasher, 152 F. Supp. 2d at 304 (a
traditional insider trading case citing S.E.C. v. Musella, 678 F. Supp. 1060,
1063 (S.D.N.Y. 1988), a misappropriation theory case, for the scienter
standard for tippee liability).

(Compl. ¶¶ 2, 3, 17.)  Thus, the Court finds that the complaint sufficiently alleges a personal benefit to the alleged insider.

For the reasons provided above, Kueng's motion to dismiss the complaint is DENIED.

**SO ORDERED:**

Barbara S. Jones
UNITED STATES DISTRICT JUDGE

Dated:      New York, New York
            July 30, 2010