UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

SECURITIES AND EXCHANGE COMMISSION,  :

                     Plaintiff,  :   09 Civ. 8763 (KBF)

      -v-  :   MEMORANDUM OPINION
                                                 & ORDER
ALISSA JOELLE KUENG,  :

                     Defendant.  :

------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 0 8 DEC 2011
```

KATHERINE B. FORREST, District Judge:

After trading closed on December 8, 2005, Electronic Arts ("EA") announced it was purchasing all of the outstanding stock of Jamdat Mobile, Inc. ("Jamdat") for $27 per share. Earlier that day, clients of defendant Alissa Joelle Kueng purchased stock in EA and subsequently made handsome profits. (Rule 56.1 Stmt. ¶¶ 115, 118.) Defendant Kueng did not herself purchase stock in EA. (Id. ¶ 111.) On October 15, 2009, four years after this transaction and these purchases occurred, the Securities and Exchange Commission ("SEC") brought what the parties all refer to as a "traditional insider trading case" against the defendant. Defendant Kueng now moves for summary judgment on the single claim against her, and to strike certain portions of plaintiff's Local Rule 56.1 Response to Statement of Undisputed Facts.

For the reasons set forth below, defendant's motions for summary judgment and to strike are DENIED.

The "insider" in this matter is a man named Benjamin Jones ("Ben Jones") who at the time of these events worked at Jamdat. (Rule 56.1 Stmt. ¶ 5.) Ben Jones provided non-public information regarding the EA/Jamdat acquisition on December 7, 2005 to his brother, William Jones, III ("Bill Jones"). (See id. ¶ 51.) On prior occasions in 2005, Bill Jones purchased Jamdat stock the day after having phone conversations with his brother. (See id. ¶ 31.)

Following the call from his brother on December 7, 2005, Bill Jones called William Dailey ("Dailey"), a securities professional at Needham and Co., informing him that EA was going to acquire Jamdat. (Id. ¶ 57.) Dailey testified in a deposition that on prior occasions Bill Jones relayed "rumors" to him regarding potential takeovers of Jamdat, and Dailey had subsequently made trades in EA securities. (Id., Ex. B at 20:11 - 23:2.)

Dailey received the call from Bill Jones on December 7, 2005, while sitting in a bar with defendant Keung. (Id. ¶ 57.) At that time, defendant Keung was employed by J.P. Morgan Chase ("JPMC") and was visiting with Dailey in both her professional and possibly a personal capacity. (See id., Ex. A. at 30:11-

20.)  It is undisputed that on the evening that Dailey received the phone call from Bill Jones at the bar, Dailey and the defendant spoke about a takeover of Jamdat by EA.  (See id. ¶¶ 41-43.)

It is undisputed that on December 8, 2005, the defendant passed along the information she had received from Dailey to other individuals at JPMC and to several clients.  (See id. ¶¶ 73, 98-101, 103-105.)  There is a dispute in the record as to whether she believed or did not believe that this information was "real" or merely a rumor.  (See Resp. to Rule 56.1 Stmt. ¶ 81.)  It is, however, undisputed that she herself participated in a "virtual" transaction in which she essentially mocked purchasing shares of EA in an account with a company called Marshall Wace.  (See Rule 56.1 Stmt. ¶¶ 91-97.)

DISCUSSION

I.   Summary Judgment Standard

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and in assessing the record to determine whether there is a genuine

issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004) (internal citations omitted).

II. Legal Analysis

The parties agree that the legal elements of a claim for "traditional" insider trading require that the SEC prove by a preponderance of the evidence that (1) the insider's provision of material, non-public information is in breach of a fiduciary duty to shareholders, and (2) that when the defendant used that information, she did so with the requisite level of scienter. Scienter can be demonstrated through circumstantial evidence of conscious misbehavior or recklessness. In re Take-Two Interactive Sec. Litig., 551 F. Supp. 2d 247, 269 (S.D.N.Y. 2008).

Proving a breach of fiduciary duty requires that the insider both transmits material non-public information and that he or she receives a direct or indirect benefit from sharing the information. Dirks v. S.E.C., 463 U.S. 646, 660, 663 (1983).

In order for defendant to prevail on her motion for summary judgment, she must be able to demonstrate through admissible

evidence that there are no triable issues of fact on these elements of the cause of action. She cannot.

The evidence in the record raises triable issues as to whether Ben Jones, employed by EA, was acting in breach of his fiduciary duty to the EA shareholders. Defendant has dwelled at length on the nature of the telephone calls that led to the tipper, Dailey, providing her with the non-public information. (Def. Mem. at 6-7.) Defendant claims that the calls providing the information were "celebratory" and that an inference of no breach should be drawn from the lack of any actual trading on the 8th by the insider or Dailey. (Id. at 13.) However, this argument ignores the evidence in the record that there appears to be a history of Ben Jones previously conveying to Bill Jones non-public EA information that Bill Jones both personally traded on and provided to Dailey, who personally traded on it. This history is enough to suggest the possibility that Ben Jones, the insider, relayed information to his brother and expected or anticipated that Bill Jones would, could and maybe should have utilized that information in connection with a securities transaction or passed it along to others for some benefit. The fact that on this particular instance Bill Jones did not trade on the information does not eliminate this issue. See S.E.C. v. Warde, 151 F.3d 42, 48 (2d. Cir. 1998) ("[T]he 'benefit' element

of § 10(b) is satisfied when the tipper 'intend[s] to benefit the . . . recipient' or 'makes a gift of confidential information to a trading relative or friend.'" (quoting Dirks, 463 U.S. at 664)).

There are also triable issues of fact regarding whether defendant had the requisite level of scienter.  The chronology of the phone conversation in the bar between Bill Jones and Dailey, conversations regarding a possible takeover of Jamdat between Dailey and Keung, as well as the series of IMs between Dailey and Keung, suggest that there are issues of fact regarding whether she was acting recklessly.  Defendant herself concedes that she was in a bar drinking heavily with Dailey for hours--and that she then went to work only a short time later and began providing the information she had received from him to others who then traded on it.  The fact that the defendant herself did a "virtual" purchase of two million "dollars" of Jamdat stock raises serious questions as to whether she understood that the information she had received was more than just a rumor.

Defendant's motion to strike, even if granted, would not alter the evidence in the record that raises the triable issues of fact set forth above.  It is therefore denied as moot.

CONCLUSION

For all of the reasons set forth above, defendant's motions are DENIED. The parties are directed to appear for a status conference on January 19, 2012, at 1:00 p.m. at the United States Court House, 500 Pearl Street, New York, New York, in Courtroom 15A.

The clerk of the court is directed to close the motions on the docket at nos. 39 and 47.

SO ORDERED:

Dated:   New York, New York
         December 8, 2011

_____

KATHERINE B. FORREST
United States District Judge